STATE v. ED. HESTER.

(Filed 11 December, 1935.)

1. **Criminal Law G l—Testimony of confessions by defendant held properly admitted upon evidence showing that confessions were voluntary.**

    Testimony of. statements made by defendant to witnesses immediately after defendant had killed deceased, which statements disclosed that defendant killed ·deceased after premeditation and with deliberation, is competent when the evidence shows that the statements were voluntarily made in conversations with the witnesses, and that the witnesses did not make any promises or threats.

2. **Criminal Law I g—**

    Defendant's objection to the charge on the ground that it unduly stressed the contentions of the State is not sustained, it appearing that the charge gave the contentions of the State and of the defendant fairly, and fully charged the law applicable to the evidence.  C. S., 564.

3. **Criminal Law K e—Statute substituting lethal gas for electrocution applies only to capital crimes committed after effective date of statute.**

    The statute, ch. 294, Public Laws of 1935, substituting execution of a death sentence by lethal gas instead of electrocution, is held to apply, by the terms of the statute, only to crimes committed after the effective date of the statute, 1 July, 1935, and the statute will not support a sentence of death by lethal gas imposed for a capital crime committed prior to the effective date of the statute although defendant was tried and convicted after the effective date thereof. .

4. **Criminal Law L f—**

    Where a defendant in a capital case has been sentenced to death by lethal gas instead of by electrocution, as required by statute, the case will be remanded to the Superior Court in order that proper judgment may be imposed.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Williams, J.,* at June Special Term, 1935, of WAKE.   Remanded.

The defendant was indicted and tried for the killing of Paul Honeycutt on 16 May, 1935.   The evidence on the part of the State was to the effect that the defendant Ed. Hester and the deceased, Paul Honeycutt,

were members of a group of prisoners working on the Cary prison farm, on 16 May, 1935. The prisoners were engaged in cutting a ditch on said farm, and while the deceased was digging in the ditch the defendant approached him from behind and without warning struck him in the head with an axe, killing him almost immediately. The defendant admits the killing, but claims that the homicide occurred during an altercation between himself and the deceased, during the course of which the deceased advanced upon him with a shovel.

The State's witness, K. B. Jones, testified that just after the killing defendant admitted to him that he killed the deceased, and stated that he got the axe for the purpose of killing him. The State's witness, Tillman McLamb, an eye-witness to the homicide, testified that the defendant approached the deceased from behind and struck him in the head with the axe without warning; that after the deceased was lying in the ditch as a result of the first blow the defendant stepped up closer to the deceased and hit him again in the head. This witness testified that immediately after defendant struck the deceased the witness said, "Well, Hester, it looks like you have killed him," to which the defendant replied, "I hope, by God, I have."

The State's witness, Cyrus Swinson, testified that the defendant came to him a short time before the homicide and borrowed the axe with which he killed the deceased. This was about 15 or 20 minutes before the squad began work in the ditch.

The defendant entered a plea of not guilty. The defendant was convicted of murder in the first degree. The judgment of the court below is as follows: "The prisoner, Ed. Hester, having been duly indicted and tried by a jury duly sworn and impaneled at this term of the Superior Court of Wake County upon the charge of murder, and having been convicted of murder in the first degree for the killing of Paul Honeycutt by verdict of the said jury duly returned in open court, it is therefore ordered and adjudged that the sheriff of Wake County, in whose custody the said prisoner, Ed. Hester, now is, forthwith convey to the State's Prison at Raleigh such prisoner, the said Ed. Hester, and deliver the said prisoner to the warden of the said State's Prison, who, the said warden, on Friday, 23 August, A.D. 1935, shall cause the said Ed. Hester to inhale lethal gas of sufficient quantity to cause the death of the said prisoner, Ed. Hester, and continue the application and administration of such lethal gas until the said prisoner, Ed. Hester, is dead. This 6 July, A.D. 1935. Clawson L. Williams, Judge presiding."

To the signing of the judgment the defendant excepted. The assignment of error as to this and other material exceptions and assignments of error made by the defendant, and the necessary facts, will be considered in the opinion.

STATE *v.* HESTER.

*Attorney-General Seawell and Assistant Attorney-General Aiken for the State.*

*Albert Doub and W. H. Sawyer for defendant.*

CLARKSON, J.  The first contention of defendant is that the court below committed error in permitting the witnesses, K. B. Jones, Tillman McLamb, Elmer McBroom, W. E. Jones, ............ Utley, and Clyde Whitaker, to testify as to how the killing took place and to the statement made by the defendant shortly after the killing of the deceased and on the day following.  We cannot so hold.

K. B. Jones testified, in part: "He (deceased) was struck once right in the back of the head, along back there, and another time on the side of the head, along here, the left side of the head.  I saw Hester at that time.  I had a conversation with him.  Court: 'Where was he?'  Ans.: Out there on the ditch.  Court: 'What time was it?'  Ans.: About six o'clock.  Court: 'Immediately after this?'  Ans.: Yes, sir; as soon as I got him straightened out and saw he was dead.  Court: 'Did you make any promise to him, offer him any inducement to make a statement to you?'  Ans.: No, sir.  Court: 'Was any threat or coercion to get a statement from him?'  Ans.: No, sir; in fact, I didn't ask him for any statement.  Court: 'It was a conversation you had with him?'  Ans.: Yes, sir.  Court: 'Was the conversation on his part purely voluntary?'  Ans.: Yes, sir.  I turned around to him after I saw he had killed him, he was about as far as from here to the wall, and I walked on back out that way and I said: 'Thirty, you have played the devil, haven't you?' and he said, 'I have done just what I intended to do.'  I said: 'You don't mean to tell me you got the axe with the intention of killing him?' and he said: 'That is exactly what I borrowed it for.'  Then I says to him, I said, 'Well, don't you know they will burn you for it?' and he said: 'I reckon they will,' said, 'That is what they ought to have done for killing my brother-in-law.'"

Tillman McLamb testified, in part: "Paul Honeycutt was right beside me and he was looking forwards.  Hester came by with the axe on his shoulder with it drawed back with both hands on it and Paul was ditching and when he got right up what you might say behind him, he come down on him on the back of the head with it and knocked him down.  At that time Honeycutt was looking the same way he was ditching and Hester was behind him.  Honeycutt fell and he fell in the ditch and Hester stepped up closer to him and hit him again on the head. . . . Honeycutt had not said anything to him that I had heard.  I was right beside him.  He did not turn around and look back that way.  I saw Hester that morning when we were going out.  I saw him borrow the axe.  He did not say anything when he hit Honeycutt the second time.

When Hester got out there and sat down I was standing in about eight feet of where he was sitting. . . . I told him when he sat down out there, I said, 'Well, Hester, it looks like you have killed him,' and he said, 'I hope, by God, I have.' There wasn't any kind of argument between those boys before he hit him. Honeycutt did not do or say anything to him at all that I had heard tell of."

The other witnesses testified to the same effect. There can be no question but that the defendant's statements were voluntarily made. No promises or threats were used. *S. v. Fox,* 197 N. C., 478; *S. v. Anderson,* 208 N. C., 771.

The defendant contends that the court below, in the charge to the jury, unduly stressed the contentions of the State, to the prejudice of the defendant, and impinged C. S., 564. We cannot so hold.

From a careful review of the charge we find that the contentions of both the State and the defendant were fairly given. The law applicable to the facts was in all respects complied with. The charge was full, explicit, and covered every aspect of the case.

The offense for which defendant was convicted was committed on 16 May, 1935. Chapter 294, Public Laws of 1935, the same being the act substituting execution of the sentence of death in North Carolina by the administration of lethal gas, for death by electrocution, was ratified on 4 May, 1935, but, under the provisions of section 6 thereof was not to become effective until 1 July, 1935. Section 4 of this chapter reads as follows: "Nothing in this act shall be construed to alter in any manner the execution of the sentence of death imposed on account of any crime or crimes committed before the effective date of this act." The effective date of the act is 1 July, 1935. As stated, the record shows that the crime of which the defendant Hester was convicted was committed before 1 July, 1935, and his sentence was imposed at a later date. The judge who pronounced the sentence evidently interpreted the language of the statute as substituting asphyxiation for electrocution in cases where the crime was committed before 1 July but the sentence passed afterwards. To this interpretation we cannot agree. The language employed in the statute, when taken in its ordinary sense, plainly signifies that for crimes committed prior to 1 July, 1935, electrocution is retained as a mode of execution.

The language employed in this statute is identical with that employed in chapter 443, Public Laws of 1909, which chapter changed the mode of execution in capital cases from hanging to electrocution. It does not appear that any cases came to this Court for construction of this particular section. However, it is apparent that the act of 1909 was used as a model for the present law.

The General Assembly was doubtless concerned with the fear that an immediate change in the mode of execution whereby electrocution was made to apply to crimes committed before the ratification of the law would violate the Constitution, which prohibits the enactment of *ex post facto* laws—Constitution of North Carolina, Art. I, sec. 32.  *S. v. Broadway,* 157 N. C., 598, 72 S. E., 987.  Whether that apprehension was well founded or otherwise does not require consideration here.  The present law was apparently intended to be, and is, consonant with this provision of the Constitution and fully within constitutional authority; and we interpret it to mean that as to capital crimes committed prior to 1 July, 1935, electrocution is retained as the mode of inflicting death.

While the question involved herein did not arise in connection with the substitution of electrocution for hanging, it is a matter of history that the last man to be hanged in the State of North Carolina was Henry E. Spivey, convicted of murder in the first degree at March Term, 1909, of Superior Court of Bladen County.

Chapter 443, Public Laws of 1909, hereinbefore referred to, was ratified on 6 March, 1909.

Spivey committed his crime, the murder of one Frank Shaw, on 10 December, 1908.  At the time of the commission of the offense, execution of the death sentence in North Carolina was by hanging.  But at the time of his conviction, at a term of court held in Bladen County beginning on the first Monday after the first Monday in March, 1909— of necessity this would have been subsequent to 6 March, 1909—electrocution had been substituted for hanging, effective in connection with crimes committed subsequent to 6 March, 1909.

And although convicted subsequent to said date, the defendant was sentenced to death by hanging, the late *Associate Justice Adams,* then a Superior Court Judge, imposing the judgment.

Spivey's case was appealed to this Court, but the present question was not raised.  See *S. v. Spivey,* 151 N. C., 676.  The record in that case, including the sentence, may be found in the files of the Supreme Court Clerk in original document form, No. 243, Seventh District, August Term, 1909.

The exception and assignment of error directed to the judgment imposed is well taken.  The case is remanded to the lower court in order that proper judgment may be imposed.  *S. v. Shipman,* 203 N. C., 325 (327).

The case is remanded for lawful sentence.

Remanded.

DEVIN, J., took no part in the consideration or decision of this case.